IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM BUNTING          *
                              *
v.                        *
                              *   Civil Action No. WMN-08-3157
THE TOWN OF OCEAN CITY,  *
MARYLAND et al.         *
                              *

   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Before the Court is Defendants' Motion for Summary Judgment, Paper No. 19.  The motion is fully briefed.  Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion should be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In this action, Plaintiff asserts claims for the violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301 et seq., by Defendants Town of Ocean City, Maryland and the Ocean City Police Department (OCPD). Plaintiff has been a member of the OCPD since 1984, first as a patrolman and then, since about 1990, as a sergeant.  He was also, at all times relevant to this action, a member of the United States Coast Guard Reserve.

The facts as developed through discovery and taken in the light most favorable to Plaintiff are as follows.

Plaintiff received notice in December of 2002 that he would be called up for active duty in the Coast Guard.  He reported for duty on February 8, 2003, and continued on active duty until September 30, 2004.  While he was on active duty, on March 1, 2004, the Chief of the OCPD, Bernadette DiPino, announced that a promotion process for the rank of lieutenant would be conducted and she encouraged "[a]ll personnel holding the rank of police sergeant" to participate.  Pl.'s Ex. 11 (emphasis in original). Plaintiff asserts that he did not learn of this promotion process until after it was completed when, by chance, he ran into one of the captains of the OCPD at an Ocean City convenience store in April or May of 2004.[1]

On June 10, 2004, Plaintiff wrote a letter to the mayor of Ocean City to complain that he was never informed of the

---

[1] Defendants note that Plaintiff is claiming that he did not learn of this promotion process in time to participate despite the fact that Plaintiff's own brother, Victor Bunting, is a captain in the OCPD and thus, part of the command staff. Plaintiff's wife also works for the OCPD.  It is also undisputed that Plaintiff was sent an email announcing the promotion process although Plaintiff asserts that he was not aware until he returned from active duty that he could access the police department's email system from outside the police department office.  Defendants also note that Plaintiff was deployed on the Chesapeake Bay and was in Ocean City quite frequently while on active duty with the Coast Guard.  The Court accepts, however, as it must on a summary judgment motion, that Plaintiff did not learn of the promotion opportunity until April or May of 2004. Nevertheless, the Court notes that, while Defendants may not have effectively informed Plaintiff of the promotion opportunity, they certain did nothing to keep him from learning about it and, in fact, could reasonably assume that he had learned about it from one or more of these sources.

2

promotion opportunity.  Pl.'s Ex. 12.  After noting that

reservists have the right to participate in any promotional

process for which they are eligible, Plaintiff continued,

> [t]he department has accommodated active military
> personnel in previous promotional processes by faxing
> written exams and scheduling oral interviews via
> teleconference.[2]  I believe that I have been
> discriminated against by Chief DiPino <u>for personal
> reasons</u> and refuse to believe Chief DiPino simply
> forgot that I was entitled to participate in the
> promotion process.

<u>Id.</u> (emphasis added).

In addition to his letter to the mayor, Plaintiff filed a

formal written complaint with the Veterans' Employment and

Training Service, United States Department of Labor (DOL-VETS)

on or about September 20, 2004.  Chief DiPino was apprised of

and responded to both the letter to the mayor and the DOL-VETS

complaint.  She took the position in her responses that the

process was certainly open to Plaintiff, that he had the

responsibility to keep in contact with the police department,

---

[2] Plaintiff prefaced his complaint with the following
commendation of Ocean City for its support of employees in the
uniformed services:

> I would like to take this opportunity to thank you and
> the members of the City Council for your continued
> support for me, my family, and other reservists who
> have been called to active duty.  The Town of Ocean
> City has always gone beyond the call of duty for its
> reservists when our country has needed their services.

<u>Id.</u>

and that, had he done so, he would have timely learned of the
promotion opportunity.  On December 14, 2004, DOL-VETS sent a
letter to Ocean City's counsel stating that it had completed its
investigation and had concluded that "it appears that Mr.
Bunting was not considered for promotion to Police Lieutenant
during the promotion process that was held while he was on
active duty and that he may have been discriminated against
because of his military obligation."  Pl.'s Ex. 19 (emphasis
added).

   In March of 2005, five months after Plaintiff returned to
the OCPD from active duty, another process for promotion to the
rank of lieutenant was offered by the OCPD.  Eleven candidates
applied for promotion, including Plaintiff.  Plaintiff was
interviewed by Chief DiPino and the Director of Human Resources
of Ocean City, Roger Weseman.  After concluding all of the
interviews, Chief DiPino compiled a ranking of the potential
candidates and ranked Plaintiff the lowest.  Weseman found only
five of the candidates potentially qualified for promotion, and
Plaintiff was not among those he found to be qualified.[3]  An
additional promotion process apparently was made available to

---

[3] Plaintiff states that "Mr. Weseman, in [Plaintiff's] opinion,
is a 'yes' man and was only brought in to back up Chief DiPino's
selection."  Pl.'s Aff. ¶ 54.  Plaintiff provides nothing to
support that bald declaration.

Plaintiff in March of 2007 but, again, Plaintiff was not selected.[4]

In his Complaint, Plaintiff alleges that Defendants, in violation of § 4311(a) of USERRA, failed to consider him for a promotion to the rank of lieutenant in 2004 while he was on active duty with the Coast Guard because of his status as a reservist (Count I).  Plaintiff also alleges that Defendants, in violation of § 4311(b) of USERRA, failed to consider him for a promotion to the rank of lieutenant in 2005 and 2007 in retaliation for his having raised complaints about the previous violation of USERRA (Count II).  Defendants have moved for summary judgment as to both counts.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In Anderson v. Liberty Lobby, Inc., the Supreme Court of the United States explained that, in considering a motion for summary

---

[4] There is some confusion in the record as to this additional promotion opportunity.  Defendants state that the appointment process was again made available to Plaintiff in the spring of 2006 but Plaintiff did not apply.  DiPino Aff. ¶ 18.   In his Complaint and in his Affidavit, Plaintiff states that he applied for and was denied a promotion in 2007.  Documents submitted with Plaintiff's opposition would indicate that the promotion process took place in 2007 and that Plaintiff participated.  See Pl.'s Exs. 40-42.

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also E.E.O.C. v. Navy Federal Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). The opponent, however, must bring forth evidence upon which a reasonable fact finder could rely. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." Pension Benefit Guar. Corp. v. Beverley, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing Pine Ridge Coal Co. v. Local 8377,

<u>UMW</u>, 187 F.3d 415, 422 (4th Cir. 1999)).   The mere existence of

a "scintilla" of evidence in support of the nonmoving party's

case is not sufficient to preclude an order granting summary

judgment.  <u>Anderson</u>, 477 U.S. at 252.

## III. DISCUSSION

Section 4311(a) of USERRA provides in pertinent part that,

> [a] person who is a member of, . . . or has an
> obligation to perform service in a uniformed service
> shall not be denied initial employment, reemployment,
> retention in employment, promotion, or any benefit of
> employment by an employer on the basis of that
> membership, . . . performance of service, . . . or
> obligation.

38 U.S.C. § 4311(a).   In order to establish his prima facie case

under § 4311(a), a plaintiff must show by a preponderance of the

evidence that his protected status was a motivating factor in

the defendant's decision not to grant him the particular

employment benefit at issue.  <u>Brandsasse v. City of Suffolk,</u>

<u>Va.</u>, 72 F. Supp. 2d 608, 617 (E.D. Va. 1999).   A motivating

factor does not mean that it had to be the <u>sole</u> cause of the

employment action.   Instead, a motivating factor is simple "one

of the factors that a truthful employer would list if asked for

the reasons for its decision."  <u>Id.</u> (internal quotation

omitted).   "Indeed, [m]ilitary status is a motivating factor if

the defendant relied on, took into account, considered, or

conditioned its decision on that consideration."  <u>Id.</u>

In establishing the prima facie case, circumstantial evidence often plays a critical part "for discrimination is seldom open or notorious."  Sheehan v. Dep't of the Navy, 240 F.3d 1009, 1014 (11th Cir. 2005).  The court can infer discriminatory motivation under the USERRA from a variety of considerations, such as:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

Id.

Once the plaintiff has met this initial burden, "the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action."  Id.  "Thus in USERRA actions there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the agency action, upon which the agency must prove, by a preponderance of evidence, that the action would have been taken despite the protected status."  Id.

Plaintiff's retaliation claim under § 4311(b) is assessed under a similar burden shifting framework.  This subsection provides in pertinent part,

> An employer may not discriminate in employment against
> or take any adverse employment action against any
> person because such person (1) has taken an action to
> enforce a protection afforded any person under this
> chapter, (2) has testified or otherwise made a
> statement in or in connection with any proceeding
> under this chapter, (3) has assisted or otherwise
> participated in an investigation under this chapter,
> or (4) has exercised a right provided for in this
> chapter.

38 U.S.C. § 4311(b).  In determining whether an employer

violated this provision, a court must first decide whether the

employee exercised such rights, thereby coming within the class

of persons protected by the statute.  <u>Wallace v. City of San

Diego</u>, 479 F.3d 616, 624 (9th Cir. 2007).  If so, the court

employs the burden shifting framework discussed above:

> the employee first has the burden of showing, by a
> preponderance of the evidence, that his or her
> assertion or pursuit of rights under USERRA was "a
> substantial or motivating factor in the adverse
> [employment] action;" the employer may then avoid
> liability only by showing, as an affirmative defense,
> that the employer would have taken the same action
> without regard to the employee's protected status.

<u>Id.</u> (quoting <u>Leisek v. Brightwood Corp.</u>, 278 F.3d 895, 898-99

(9th Cir. 2002)).

Here, the basis for Plaintiff's § 4311(a) claim is his

assertion that he "should have been promoted in March 2004 and

plaintiff submits this would have been the case had the

defendants notified him of and considered him for the promotion

process that occurred while he was on military leave."  Opp'n at

5.  Certainly, in a literal sense, Plaintiff's active duty

status caused him not to be considered for a promotion in 2004.
Plaintiff, however, provides little in support of his conclusion
that, had he been considered, he would have been promoted.  It
appears that Plaintiff views his seniority relative to other
applicants as one of the primary attributes in his favor, as
that is the characteristic to which he most frequently refers.
See Opp'n at 14 ("It is inconceivable that the other candidates,
all junior to plaintiff but one, would have all been ranked
higher than plaintiff in previous applications."); see also id.
at 5, 8, and 11.[5]  In addition to his seniority, Plaintiff turns
to the temporal proximity of his USERRA complaint and his denial
of promotion in 2005 to support his claim under § 4311(b).
Opp'n at 10-11.[6]

---

[5] Plaintiff also points to the fact that he had served on two
occasions as an acting lieutenant.  The Court notes that several
other candidates, both those selected and not selected, also
served as acting lieutenants.  See Pl.'s Ex. 27 at A-306.

[6] As further evidence that DiPino discriminates against those in
the uniformed services, Plaintiff mischaracterizes DiPino's
deposition testimony.  Plaintiff states in his opposition that
"Chief DiPino testified at her deposition that having military
members of her force take time off for military duty caused
[scheduling] problems in her department."  Opp'n at 14 (citing
DiPino Dep. at 112, alteration in Pl.'s Opp'n)  The testimony
that Plaintiff cites is the following.

> Q: Do you find being called up for active duty to be
> disruptive to the department when a member is called
> up?
>
> A: Well, it does cause the staff to change and put
> people in position.  So disruptive, yes, but it's part

The Court will assume, without deciding, that Plaintiff has met his burden of producing sufficient evidence to support the conclusion that his active duty status and his filing a USERRA complaint may have been a motivating factor in his not achieving the rank of lieutenant.  The Court finds, however, that Defendants have presented compelling and undisputed evidence that Chief DiPino based her decision not to promote Plaintiff in 2005 upon considerations entirely unrelated to Plaintiff's military status or USERRA activity and those same considerations would have applied to her 2004 decision, had Plaintiff applied.

 Chief DiPino states that her evaluation of Plaintiff's qualifications for the lieutenant's position was based largely on his answers to two specific questions she posed in his interview.  Those answers, she opines, revealed a lack of loyalty on the part of Plaintiff to the department and to her leadership.  Before discussing those answers, the Court must provide some additional background information.

---

of their service, it's an honorable thing they do, and we accommodate for it.

Q: Is that part of what you think you should do as an employer?

A: Yes.

DiPino Dep. at 111-12.

When the police chief who preceded Chief DiPino retired,
Ocean City conducted a national search for his replacement.
Three members of the OCPD applied, including DiPino and
Plaintiff's brother, Victor Bunting.  When DiPino was selected
over Victor Bunting, he was not happy with the decision and, in
DiPino's view, has openly demonstrated his disappointment with
disloyalty to and disrespect for DiPino.  DiPino Aff. ¶ 16.
Others in the OCPD were apparently also unhappy with DiPino's
selection.  Id. ¶ 11.

In addition to reflecting this generalized dissatisfaction
with DiPino, Victor Bunting, along with five other members of
the command staff that DiPino inherited when she took office,
sued Ocean City over a Labor Code provision adopted in 2003.
This provision prevented OCPD personnel with the rank of
lieutenant or higher from participating in collective
bargaining.  DiPino argued in defending that suit that,

> [t]o permit these officers to engage in collective
> bargaining themselves places them in a hopeless
> conflict of interest as they perform their duties, and
> leaves management in a position where it can no longer
> depend on the faithfulness of those who represent it.
> . . . [I]f the captains and lieutenants were
> permitted to collectively bargain she "would not have
> direct control over [her] command staff anymore"
> because they would instead "be directed by a
> collective bargaining agreement."

Mayor and City Council of Ocean City v. Bunting, 895 A.2d 1068,
1073 (Md. Ct. Spec. App. 2006).  An appeal of a decision of the

Circuit Court of Worcester County in favor of Plaintiff's
brother and the other challenging officers was pending at the
time of the 2005 promotion process.  The Maryland Court of
Special Appeals ultimately agreed with DiPino's position,
however, and held that "an employer is entitled to the undivided
loyalty of its representatives," which would be undermined if
senior officers in the OCPD were permitted to engage in
collective bargaining.  Id.

     In interviewing each candidate for promotion to lieutenant
in 2005, DiPino asked 15 questions, including the following:
"12. Name one person in the command staff you admire and why?"
and "13. If you were selected for this position, you will no
longer fall under the collective bargaining group.  How do you
feel about the lieutenant's and captain's right to bargain and
the pending lawsuit."  Defs.' Ex. 2, Attach. C (DiPino's notes
of interview).  Plaintiff responded to question 12 by naming his
brother, Victor, and went on to state that his brother "knows
how to run the department."  Id.  DiPino heard this response as
a slap at her management style and her own ability to run the
department.  DiPino Aff. ¶ 17.  In response to question 13,
Plaintiff responded that he believed that these officers should
be given the right to bargain.  DiPino interpreted this response
as a "clear indication that [Plaintiff] is not qualified to be a
member of the command staff."  Id.  In opposing Defendants'

                              13

motion, Plaintiff neither denies that he provided these answers
nor challenges the reasonableness of the conclusions DiPino drew
from those answers.

Further evidence that DiPino's reasons for not selecting
Plaintiff had nothing to do with his military service or USERRA
complaint comes from Plaintiff's own hand.  As noted above, in
his letter to the mayor complaining that DiPino failed to inform
him of the 2004 promotion opportunity, Plaintiff states that she
did so "for personal reasons."  Pl.'s Ex 12.  Plaintiff admitted
in his deposition that one of the "personal reasons" would have
been "[DiPino's] relationship with [Plaintiff's] brother.  Pl.'s
Dep. at 35.  When asked why he did not state in the letter to
the mayor that he believed he had been discriminated against
because he was in the military, Plaintiff simply replied, "Just
the words I chose."  Id.

In light of the evidence in the record, the Court finds
that no reasonable jury would not conclude that DiPino would
have made the same decision denying Plaintiff's promotion
regardless of his military status or USERRA complaint.
Plaintiff's touting of the qualifications for the position that
he deems most significant - his seniority, his commendation by
one of the OCPD captains,[7] or his prior functioning as an acting

---

[7] Plaintiff points to the fact that Captain Jeffery Kelchner
ranked him as his first choice during the 2005 selection

14

lieutenant – does nothing to negate DiPino's legitimate concern

regarding Plaintiff's fundamental loyalty to her command.

Accordingly, the Court will grant Defendants' motion.  A

separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: January 6, 2010

---

process.  Opp'n at 14.  In Plaintiff's deposition, however,
Plaintiff acknowledges that Captain Kelchner does not have a
close working relationship with Chief DiPino.  Pl.'s Dep. at 36.